620 So.2d 1298 (1993)
Dr. Eliot B. WEINGER, individually, and Dr. Ronnie Arad, individually, Appellants,
v.
STATE FARM FIRE & CASUALTY COMPANY, Appellee.
No. 92-0474.
District Court of Appeal of Florida, Fourth District.
June 23, 1993.
Rehearing Denied August 5, 1993.
Cort A. Neimark of Neimark & Neimark, P.A., Coral Springs, and Diane H. Tutt of Diane H. Tutt, P.A., Fort Lauderdale, for appellants.
Richard A. Sherman and Rosemary B. Wilder of Richard A. Sherman, P.A., and Daniel L. Haverman and Bruce A. Chaimowitz of Green, Haverman & Ackerman, P.A., Fort Lauderdale, for appellee.
WARNER, Judge.
In this appraisal dispute between appellants and their insurance company over the value of the loss of their business, the trial court refused to recuse a "neutral" umpire selected by the two appraisers appointed by the parties. Later it refused to vacate the award made by the appraisers. The claim of the appellants was that this "neutral" umpire could hardly be neutral when he had a continuing financial relationship with the appellee. We agree and reverse.
Appellants sustained a loss of income to their business as a result of a fire in their building. Appellee provided a business insurance *1299 policy covering the loss. Appellants made a claim for loss of income which was disputed by State Farm. The subject policy provided for an appraisal in the event the parties failed to agree.
4. Appraisal. If the insured and the Company fail to agree on the amount of the loss, either can demand that the amount of the loss be set by appraisal. If either party makes a written demand for appraisal, each shall select a competent independent appraiser. Each shall notify the other of the selected appraiser's identity... .
The two appraisers shall select a competent, impartial umpire. If the appraisers are unable to agree upon an umpire within fifteen days, the insured or the Company may petition a judge ... to select an umpire.
The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to the Company, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of loss.
The parties each selected their appraiser/accountant. The appraisers were unable to agree on an umpire. Accordingly, appellee moved the court to appoint one, and the court appointed Jim Whiddon as the neutral umpire.
About three months later, appellants moved to recuse Mr. Whiddon because it had come to their attention that he had previously been hired as an accountant by State Farm. The trial court denied the motion, and after the disposition of other motions the appraisal went forward. The award was signed by the appraiser appointed by State Farm and by Mr. Whiddon. Appellee moved to vacate the award because of the bias of the umpire, and at that time submitted the deposition of Mr. Whiddon in which he detailed his connection with State Farm. While he worked for other insurance companies and insureds evaluating losses, his collected revenues from State Farm alone ranged from $11,000 in 1987 to $61,000 in 1989. In 1990 he collected $48,000 from State Farm. These figures amounted to a considerable portion of his annual collected fees. He further testified that State Farm had retained him during the course of 1991 (the year he was appointed as the neutral umpire) but he did not know how much he expected to earn that year from the company. Despite these revelations, the court denied the motion to vacate the award.
In arbitration cases, it is now very clear that an arbitrator has an affirmative duty to disclose any dealings that might create an impression of possible bias. See Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968); International Ins. Co. v. Schrager, 593 So.2d 1196 (Fla. 4th DCA 1992); Middlesex Mut. Ins. Co. v. Levine, 675 F.2d 1197 (11th Cir.1982). Failure to disclose such an association undermines the appearance of propriety and the confidence of the fairness of the proceedings and requires the vacation of the award. See Commonwealth, 393 U.S. at 149-150, 89 S.Ct. at 339-340; Schrager, 593 So.2d at 1197. State Farm argues, however, that this was not an arbitration proceeding but an appraisal to which the rules of arbitration do not apply.
State Farm never presented this argument below. In fact, many of State Farm's motions request the court to take action regarding the instant "arbitration" and in its argument to the trial court its attorney stated that the policy calls for appraisal "which is essentially a binding arbitration." That position is correct, not the one State Farm advocates on appeal. We have considered the identical "appraisal" clause in Intracoastal Ventures v. Safeco Ins. Co., 540 So.2d 162 (Fla. 4th DCA 1989), and held that the appraisal was in effect an arbitration agreement. Furthermore, where the result of the appraisal is binding on the parties, and the policy itself contemplates that a neutral umpire shall be appointed, we see no reason why the general rule of impartiality should not be applied to appraisers selected pursuant *1300 to the provisions of an insurance policy. See 44 Am.Jur.2d § 1688, citing Western Assur. Co. v. Hall, 120 Ala. 547, 24 So. 936, 937 (1898); Continental Ins. Co. v. Vallandingham & Gentry, 116 Ky. 287, 76 S.W. 22 (1903); Hickerson v. German American Ins. Co., 96 Tenn. 193, 33 S.W. 1041 (1896).
We are convinced that the extent of Mr. Whiddon's prior and continuing business dealings with State Farm should have been disclosed to the court when it was asked to select a neutral third appraiser.[1] It was error for the court to fail to recuse him and vacate the award, upon being apprised of the substantial contact between the umpire and State Farm. As we said in Schrager:
[T]he appearance of neutrality can be as important as neutrality itself because of the former's impact upon confidence in the proceedings  by the parties and by the public.
593 So.2d at 1197.
We reverse the final judgment and remand to the trial court to vacate the award and for further proceedings thereon.
DELL and KLEIN, JJ., concur.
NOTES
[1] By comparison, section 112.3145(3)(a) & (b), Florida Statutes (1991) requires public officers to file a statement of financial interest disclosing all sources of income over 5% of their gross income (excluding their public salary) and all sources of income over 10% or $1,500 received from a business entity in which the officers hold a material interest. Judicial officers are required to disclose all sources of income over $1,000.00.